IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|                              |   |                              |
|------------------------------|---|------------------------------|
| UNITED STATES OF AMERICA,    | X |                              |
|                              | X |                              |
|      Plaintiff,              | X |                              |
|                              | X |                              |
| vs.                          | X | Cv. No. 09-2685-STA/cgc      |
|                              | X | Cr. No. 06-20416(JDB)-STA    |
| APRIL BRADLEY,               | X |                              |
|                              | X |                              |
|      Defendant.              | X |                              |
|                              | X |                              |

---

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 5)
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

---

On May 11, 2009, Defendant April Bradley, Bureau of Prisons registration number 21233-076, an inmate at the Federal Medical Center Carswell in Forth Worth, Texas, filed a pro se motion under 28 U.S.C. § 2255. (Docket Entry "D.E." 1.) On January 15, 2010, the Court directed the United States to respond to the motion to vacate. (D.E. 2.) On February 9, 2010, the United States filed a motion for summary judgment, supported by transcripts of Defendant's change of plea and sentencing hearings. (D.E. 5.)

On November 16, 2006, a federal grand jury returned a forty-four count indictment against Bradley charging her with multiple counts of possession of counterfeiting instruments, conspiracy to defraud the United States, uttering forged and

counterfeit securities, fraud by wire, radio, or television, fraud with identification documents, passing counterfeit obligations or securities, and uttering counterfeit obligations. (Criminal Docket Entry ("Cr. D.E.") 1.)  On November 20, 2007, Bradley pled guilty before United States District Judge J. Daniel Breen, pursuant to a written plea agreement, to count seven, charging her with aiding and abetting Shelia Cannon in making, uttering, and possessing a counterfeit check worth $8,895 on August 27, 2003, in violation of 18 U.S.C. § 513(a), and count forty-one, charging her with aiding and abetting an unknown accomplice in passing, uttering, and publishing to Target Corporation nine counterfeit $100 bills on September 17, 2006, in violation of 18 U.S.C. § 472. (Cr. D.E. 150.)

The plea agreement provided as follows:

The Defendant, April Mercedes Bradley, knowingly and voluntarily agrees with the United States, through the United States Attorney for the Western District of Tennessee, through the undersigned Assistant U.S. Attorney, to plead guilty to Count 7 of the indictment charging the Defendant with violations of 18 U.S.C. § 513(a) and 18 U.S.C. § 2 and Count 41 of the indictment charging the Defendant with violations of 18 U.S.C. § 472 and 18 U.S.C. § 2. The remaining counts will be dismissed at sentencing.

1.   Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure and inconsideration for the Defendant's plea of guilty, the United States and the Defendant will jointly recommend the following: (1) that the Defendant receive a three-level reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1; and (2) that the Defendant be sentenced within the

applicable guideline range. The Defendant understands that if the Court does not accept these recommendations the Defendant nevertheless has not right to withdraw the plea.

2.    The Sentencing Guidelines, which establish the penalty range, will be computed on the total amount of relevant conduct. The parties agree that the total amount of relevant conduct and any other sentencing enhancements will be determined by the sentencing court utilizing a preponderance of the evidence standard of review. The Defendant understands that for the purpose of relevant conduct, the Court may consider losses derived from the counts of conviction and losses caused from dismissed counts and uncharged conduct of the defendant.

3.    The Defendant agrees to pay restitution as ordered by the Court to all identifiable victims who suffered losses as a result of any criminal conduct that is the subject of this plea agreement. The Defendant agrees that for the purpose of restitution the Court may consider losses derived from the counts of conviction and losses caused from dismissed counts and uncharged conduct of the defendant.

4.    Neither the United States nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court.

5.    The Defendant knowingly, intelligently and voluntarily waives any rights to an appeal of conviction or sentence.

6.    Should it be judged by the United States that the Defendant violated any federal, state or local law, or has engaged in any conduct constituting obstructing or impeding justice within the meaning of U.S. Sentencing Guidelines § 3C1.1 or has failed to make any court appearances in this case, from the date of the Defendant's signing of this plea agreement to the date of the Defendant's sentencing, or if the Defendant attempts to withdraw the plea, the United States will be released from its obligations and would become free to argue for any sentence within

statutory limits. Such a breach by the
Defendant would not release the Defendant from
this plea of guilty.

7.    The Defendant understands that any statement
made in the course of the plea colloquy may be
used against the Defendant in any criminal
prosecution. The Defendant knowingly,
intelligently and voluntarily waives any
objection based on Fed. R. Evid. 410.

8.    The Defendant understands that the United
States is not required to disclose material
impeachment evidence prior to entering a plea
agreement. The Defendant knowingly,
intelligently and voluntarily waives any right
to receive impeachment information.

9.    The Defendant further understands and agrees
the special assessment of $100 per count is
due and payable to the U.S. District Clerk's
Office immediately following the Defendant's
sentencing.

10.   The Defendant agrees to upon request, provide
the United States Probation Office and the
Attorney for the United States a complete and
accurate personal financial statement and any
and all other financial records and documents
pertaining to her financial condition.

11.   This writing constitutes the entire Plea
Agreement between the Defendant and the United
States with respect to her plea of guilty. No
additional promises, representations or
inducements other than those referenced in the
Plea Agreement have been made to the Defendant
or to the Defendant's attorney with regard to
this Plea, and none will be made or entered
into unless in writing and signed by all
parties.

(Cr. D.E. 151, pp. 1-4.)

On July 23, 2008, Judge Breen sentenced Bradley to two

forty-month terms of imprisonment on counts seven and forty-one, to

be served concurrently, to be followed by a three-year term of

supervised release. (Cr. D.E. 201.)   The Court's judgment was entered on July 25, 2008. (Cr. D.E. 202.)  Bradley did not appeal.

On May 11, 2009, Bradley filed this § 2255 motion alleging that her guilty plea was involuntary because counsel and the Assistant United States Attorney ("AUSA") misadvised her about her sentence exposure.  (D.E. 1 at 1.) Bradley also contends that her sentencing guidelines range was erroneously computed. (Id.) Additionally, Bradley's motion contains numerous pages of complaints arising from the conditions of her confinement.  Those complaints do not provide a basis for relief under 28 U.S.C. § 2255.  To the extent Bradley believes her conditions of confinement violate her constitutional rights, she must file the appropriate complaint pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), in the district of her confinement. Those complaints will not be further addressed in this proceeding.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2). As the Supreme Court has articulated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial.  The
moving party is "entitled to judgment as a matter of law"
because the nonmoving party has failed to make a
sufficient showing on an essential element of [his] case
with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation

omitted).

Under Rule 56(e)(2), "[w]hen a motion for summary
judgment is properly made and supported, an opposing party may not
rely merely on allegations or denials in its own pleading; rather,
its response must —- by affidavits or as otherwise provided in this
rule -— set out specific facts showing a genuine issue for trial."
In considering a motion for summary judgment, "the evidence as well
as the inferences drawn therefrom must be read in the light most
favorable to the party opposing the motion." Kochins v. Linden-
Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986) (citation
omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence
[presented by the nonmoving party] is such that a reasonable jury
could return a verdict for the nonmoving party." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252
("The mere existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient; there must be evidence
on which the jury could reasonably find for the plaintiff. The
judge's inquiry, therefore, unavoidably asks whether reasonable
jurors could find by a preponderance of the evidence that the
plaintiff is entitled to a verdict"); Matsushita, 475 U.S. at 586

("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Anderson, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. See Sunal v. Large, 332 U.S. 174, 178, 67 S. Ct. 1588, 1590, 91 L. Ed. 1982 (1947). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral

proceedings." <u>Stone v. Powell</u>, 428 U.S. 465, 477 n.10, 96 S. Ct. 3037, 3044 n.10, 49 L. Ed. 2d 1067 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." <u>Grant v. United States</u>, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

<u>Id.</u>

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. <u>El-Nobani v. United States</u>, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); <u>Peveler v. United States</u>, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); <u>Phillip v. United States</u>, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached

exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996); see also Blackledge v. Allison, 431 U.S. 63, 74 n.4, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who

presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion."). Defendant has the burden of proving that she is entitled to relief by a preponderance of the evidence. <u>Pough v. United States</u>,, 442 F.3d 959, 964 (6th Cir. 2006).

Defendant contends that her guilty plea was involuntary because of misadvice about her sentencing exposure by counsel and the Assistant United States Attorney. She contends that she was told that she could get up to twenty-four months imprisonment, but that she would get zero to six months imprisonment if she entered a plea. She characterizes the alleged misadvice as coercion. The Court will construe this claim as one of ineffective assistance by her attorney.

A claim that ineffective assistance of counsel has deprived a defendant of her Sixth Amendment right to counsel is controlled by the standards stated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. [<u>Strickland</u>, 466 U.S.] at 689, 104 S. Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' <u>Id.</u>, at 687, 104 S. Ct. 2052." <u>Harrington v. Richter</u>, ___ U.S. ___, ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694, 104 S. Ct. at 2068.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [<u>Strickland</u>, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' <u>Id.</u>, at 687, 104 S. Ct. 2052." <u>Richter</u>, ___ U.S. at ___, 131 S. Ct. at 787-88; <u>see also id.</u> at ___, 131 S. Ct. at 791-72 ("In assessing prejudice under <u>Strickland</u>, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); <u>Wong v. Belmontes</u>, ___ U.S. ___, ___, 130 S. Ct. 383, 391-92, 175 L. Ed. 2d 328 (2009) (per curiam) ("But <u>Strickland</u> does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, <u>Strickland</u> places

---

[1]    "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." <u>Strickland</u>, 466 U.S. at 697, 104 S. Ct. at 2069. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. <u>Id.</u>

the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

"Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. ___, ___, 130 S. Ct. 1473, 1385, 176 L. Ed. 2d 284 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. <u>Strickland</u>, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under <u>de</u> <u>novo</u> review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." <u>Id.</u>, at 689, 104 S. Ct. 2052; <u>see also</u> <u>Bell v. Cone</u>, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. <u>Strickland</u>, 466 U.S., at 690, 104 S. Ct. 2052.

<u>Richter</u>, 131 S. Ct. at 788.

The two-part test stated in <u>Strickland</u> applies to challenges to guilty pleas based on the ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58, 106 S. Ct. 366, 369-70, 88 L. Ed. 2d 203 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters h[er] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" <u>Id.</u> at 56, 106 S. Ct. at 369 (quoting <u>McMann v.</u>

Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d
763 (1970)). "[T]o satisfy the 'prejudice' requirement, the
defendant must show that there is a reasonable probability that, but
for counsel's errors, [s]he would not have pleaded guilty and would
have insisted on going to trial." Id. at 59, 106 S. Ct. at 370;
Padilla, 559 U.S. at ___, 130 S. Ct. at 1485 ("[T]o obtain relief on
this type of claim, a [prisoner] must convince the court that a
decision to reject the plea bargain would have been rational under
the circumstances.").

        The terms of Defendant's plea agreement are set forth
above. By signing the agreement, Defendant expressly acknowledged
that, although she would receive a recommendation for a three-level
reduction for acceptance of responsibility, she would be sentenced
within her applicable sentencing guidelines range as determined by
the sentencing court after considering her relevant conduct,
including losses derived from the counts of conviction and losses
caused from dismissed counts and uncharged conduct. (Cr. D.E. 151 at
1-2.) The plea agreement explicitly stated that no "promises or
representations as to what sentence will be imposed by the Court"
and no "additional promises, representations or inducements" were
made to Defendant outside the scope of the plea agreement. (Id. at
2-3.)

        During the change of plea hearing, the following exchanges
took place between Judge Breen, the attorneys, and Defendant:

    The Court:     All right. Would you please state your name for
                   the record, please?

13

| | |
|---|---|
| Defendant: | April Bradley. |
| The Court: | Ms. Bradley, would you mind telling me your age, please. |
| Defendant: | 23. |
| The Court: | And how far did you go in school? |
| Defendant: | I dropped out in tenth grade, but I went back and got my GED. |
| The Court: | Okay. Now before coming here today, have you taken any type of medication or any other type of drugs or alcoholic beverages that would effect your understanding of these proceedings? |
| Defendant: | No. |
| The Court: | Do you understand what we are doing here this afternoon, ma'am? |
| Defendant: | Yes. |
| The Court: | All right. Have you had sufficient opportunity to discuss this matter with your attorney, Mr. Germany? |
| Defendant: | Somewhat, yes. |
| The Court: | Well, do you think that you need additional time to discuss this matter with him, ma'am? Because we are not here to rush you through this. |
| Defendant: | I think I understand. |
| The Court: | Well, it's not that I'm asking if you understand. I've already asked you about that, or I will ask you about that, but what I am asking you is whether or not you feel that you've had enough time to talk with your counsel, with your attorney? |
| Defendant: | Yes, sir. |
| The Court: | You think so? |
| Defendant: | (Nods head affirmatively). |
| The Court: | You have to say yes or no because they can't take a nod. |

| | |
|---|---|
| Defendant: | Yes. |
| The Court: | Okay. And are you satisfied with his advice and representation given you in this case? |
| Defendant: | I guess. |
| The Court: | Well, that's not good enough, Ms. Bradley. Either you are or you are not. "I guess" is not going to be good enough for me, ma'am. |
| Defendant: | I don't know. I don't know. I guess yes, yes. |
| The Court: | I'm sorry? |
| Defendant: | Yes. |
| The Court: | Where have you been, Ms. Bradley? You were supposed to be here at 3:45. Where have you been? |
| Defendant: | Well, my sister called and said that her lawyer told her she needs to be here at 3:45. |
| The Court: | Your sister? |
| Defendant: | Latasha Wright. |
| The Court: | Your sister is not here to be pleading guilty, you are. |
| Defendant: | Well, from what - she called me to say that's she's supposed to today at the same time as me, and her lawyer called her at the last minute, and so I went to get her - |
| The Court: | Well, I guess I'm not quite understanding. |
| Counsel: | Her sister is a codefendant, Judge. I guess maybe the lawyer thought her sister should be there. I'm not sure. I haven't spoken with the lawyer. |
| The Court: | Well, Ms. Bradley, one thing I want to make sure is that, number one, is that you've had complete time, complete and sufficient time to understand what you are doing here today and to go over with your attorney in a satisfactory time period everything that you are going through today and what the implications of this plea is. So if you feel like you haven't had that time, then I'm |

15

|  |  |
|---|---|
|  | going to reset this matter. If you wish to proceed, then we will go ahead and proceed. What do you want to do? Don't be looking at Mr. Germany. It's up to you, ma'am. You tel me. |
| Counsel: | Judge, if I could say something for the record. You know, I did meet with Ms. Bradley for two to three hours about two weeks ago, and we went over everything with regards to the plea. I just want Your Honor to know this isn't just a, you know - I just want to let you know, Your Honor, that I am prepared, and I thought I had prepared Ms. Bradley, but I'm just telling you what really just, just so you can understand that we have, we have met extensively in this case. |
| The Court: | Well, Ms. Bradley, Mr. Germany indicates that he feels like he's gone over it with you enough. Now the net question, though, is whether you think you've had enough time to consider this and to review and ponder it, I guess, and decide that you want to proceed further. Are you ready to proceed today, ma'am? |
| Defendant: | Yes. |
| The Court: | So my question is are you satisfied with the advice and representation given to you by Mr. Germany? |
| Defendant: | I guess so. |
| The Court: | Do you have any complaints about his representation given to you? |
| Defendant: | No. |
| The Court: | I'm sorry? |
| Defendant: | No. |
| The Court: | Okay. Now I want to go over with you a number of rights that you will be waiving or giving up by reason of your plea of guilty to these charges. Do you understand that under the constitution and laws of the United States that you are entitled to a trial by a jury on the charges in the indictment? |
| Defendant: | Yes. |

The Court:     Do you also understand that at the trial you
               would be presumed to be innocent, and the
               government would have to prove that you were
               guilty by competent evidence beyond a reasonable
               doubt? Do you understand that, ma'am?

Defendant:     Yes.

The Court:     Do you understand that at the trial the
               government would have to put on witnesses here
               in this courtroom in your presence, and your
               attorney could cross-examine those government
               witnesses, could object to any evidence that the
               government offers, and could offer evidence on
               your behalf? Do you understand that ma'am?

Defendant:     Yes.

The Court:     Do you understand that at the trial, you would
               have a right to testify, if you wanted to do so,
               but you also would have a right not to testify,
               and if you decided not to testify, that could
               not be used against you in any way? Do you
               understand that, ma'am?

Defendant:     Yes.

The Court:     And do you understand that if you plead guilty
               and I accept your plea, you'll be giving up your
               right to a trial and the other rights I've just
               gone over with you, you also will be giving up
               your right to appeal your conviction; do you
               understand that, ma'am?

Defendant:     Yes.

The Court:     And as I indicated, there will not be a trial
               based upon your plea, and I would then sentence
               you after considering what is called a
               presentence report, which I will go over with
               you in just a moment; do you understand that,
               ma'am?

Defendant:     Yes.

The Court:     Now having gone over those rights with you, Ms.
               Bradley, is it still your intention to enter a
               plea of guilty to Counts 7 and 41 of the
               indictment in this case?

Defendant:     Yes, sir.

| | |
|---|---|
| The Court: | Now, have you seen a copy of the indictment, Ms. Bradley? |
| Defendant: | Yes, sir. |
| The Court: | And have you had a chance to read it over and discuss it with your attorney, Mr. Germany? |
| Defendant: | Yes, sir. |
| The Court: | All right. I want to review with you again the charges that are set forth in the two counts that I just referred to, that is Count 7 and Count 41. Count 7, which is set forth on page 5 of the indictment, states as follows: On August 27th of 2002 in the Western District of Tennessee and elsewhere, that you along with a person, another person, Ms. Cannon, are charged with aiding and abetting by each other, that you did unlawfully, knowingly and intentionally make, utter and possess counterfeited securities of an organization, that is check number 45614 in the amount of $8,895 drawn on First Tennessee Bank, the account of Acura, with the intent to deceive another person and organization in violation of 18 United States Code Section 2 and 18 United States Code Section 513(a). Do you understand what you are being charged with? Actually, is that (a) or (b)? I know it's in the plea agreement. I believe it's mentioned as 513(b). |
| AUSA Boucek: | Sorry, Your Honor, that should be 513(a). I apologize. |
| The Court: | Let's change that on - Here you go. Change that on the plea agreement, please, and initial it and give it to Mr. Germany. Ms. Bradley, do you understand what you're being charged with in that count, ma'am? |
| Defendant: | Kind of sort of. The part I'm unsure about is it's not whether or not I had anything to do with it, it's whether or not I know. It says, the part where it says intentionally, unlawfully, knowing and intentionally make, utter and possess, that confuses me. |
| The Court: | Well, you are being charged with aiding and abetting basically to - you're aiding or assisting with Ms. Cannon in the unlawful |

|  |  |
|---|---|
|  | knowing and intentionally making or uttering or possessing a counterfeit security. That is that check I just mentioned. I haven't heard the facts of this matter, so I don't know exactly what it is that you are specifically being charged with, but the aiding and abetting is not necessarily that you directly or specifically committed the offense, but if you assisted or aided Ms. Cannon in doing that, then of course you could be tried and charged and could be convicted as what's called a principal just as if you did it yourself. Do you understand that, ma'am? |
| Defendant: | Yes, sir. |
| The Court: | Do you understand what you are being charged with here? |
| Defendant: | Yes, sir. |
| The Court: | All right. |
| Counsel: | And, Your Honor, I think it always throws my clients off no matter how I try to explain it to them. Obviously the government has to charge in the conjunctive. That's just - Under the case law they have to charge it as "and", but in reality it could be in this case "or". It could be one of the three. |
| The Court: | The statute actually probably reads as "or", so even though I'm reading it as an "and," Ms. Bradley, the statute in which you are charged with it does actually say make, utter or possess a counterfeit security, so it could be one of the three as opposed to all of them. Do you understand that, ma'am? |
| Defendant: | Okay, yes. |
| The Court: | Now the potential penalty for a violation of the sections that I just described to you, Ms. Bradley, is not more than five years in prison, plus up to a $250,000 fine or both, plus up to three years supervised release together with a mandatory special assessment of $100. Do you understand what you are being charged with in this count, ma'am? Excuse me. Do you understand the possible penalties involved here? |

Defendant:      Yes.

The Court:      I'm going to turn to Count 41, which would be
                set forth on page 22 of the indictment, along
                with others, but let me refer to Count 41 which
                states that, on or about the dates listed below,
                and I'm going to go to the date for Count 41, in
                the Western District of Tennessee and elsewhere,
                that you did, you, aiding and abetting by an
                accomplice know to the grand jury with intent to
                defraud did unlawfully pass, utter and publish –
                that's the way the indictment read, so it should
                be "or" published, could be "or" published – to
                Target Corporation a falsely made, forged and
                counterfeited obligation of the United States,
                that is, a federal reserve note in the
                denomination of $100, which they, you and the
                unknown accomplice, or the accomplice known to
                the grand jury, which they knew to be falsely
                made, forged or counterfeited in violation of 18
                United States Code Section 2 and 18 United
                States Code Section 472. Now the Count 41 date
                is September 17th of 2006. The amount of the
                counterfeit obligation –


                              . . .


The Court:      The amount of the counterfeit is $900, and the
                transaction – there apparently is not a number
                there I guess on the check. Do you understand
                what you are being charged with there Ms.
                Bradley?

Defendant:      This mean I passed counterfeit money.

The Court:      I'm sorry?

Defendant:      I passed counterfeit money.

The Court:      Well, you aided someone else, I don't know who
                that other person was, with intent to defraud,
                that by aiding that person you did unlawfully
                pass, utter or publish to Target Corporation a
                falsely made forged and counterfeited obligation
                of the United States in the amount I told you
                about and the date. Do you understand what you
                were charged with there?

Defendant:      Yes, sir.

| The Court: | The potential penalty there, Ms. Bradley, is not more than five years in prison plus not more than a $250,000 fine or both, plus up to three years supervised release together with a mandatory special assessment of $100. Do you understand what the possible penalties are involved there, ma'am? |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | All right. Ms. Bradley, do you understand that any sentence that you might receive in this case would be without parole, that parole sometimes applies to cases in state court, but it does not apply here in federal court. Do you understand that, ma'am? |
| Defendant: | Yes, sir. |
| The Court: | And do you understand with respect to the period of supervised release that I mentioned to you in describing the penalty aspect of these charges, that there would be a period of supervision after your release from any type of incarceration or jail time that you may receive, and if you violated the conditions of your supervised release, that could result in you serving additional time up to the length of that supervised release period; do you understand that, ma'am? |
| Defendant: | Yes, sir. |
| The Court: | And there could be restitution made in this case; is that correct? |
| AUSA Boucek: | Yes, sir. |
| The Court: | So do you understand you can be required to make restitution in this case, ma'am, for the offenses in this case? |
| Defendant: | Yes, sir. |
| The Court: | Now, Ms. Bradley, has anyone threatened you or tried to force you in any way to plead guilty to these charges? |
| Defendant: | No, sir. |

| The Court: | And there has been a document provided to the court entitled a Memorandum of Plea Agreement. It is a four-page document. pages 3 and 4 have signatures on them. It appears your signature is on page 3. I'm going to had you back the plea agreement and ask you if in fact that is your signature on the plea agreement, ma'am. |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | Did you enter into that agreement freely and voluntarily? |
| Defendant: | Yes, sir. |
| The Court: | I'm going to ask Mr. Braden Boucek who represents the government in this case to go over with you in summary the terms of the plea agreement that you have presented to the court with the government. Please listen to what he has to say. Mr. Boucek. |

. . .

| The Court: | Ms. Bradley, is this your understanding as to the terms of the plea agreement you had with the government, ma'am? |
|---|---|
| Defendant: | Yes, sir. |
| The Court: | Now I want to make sure you understand that the court is not bound by this agreement or any recommendation made in the agreement. Until I receive a presentence report and have a chance to review that, I cannot tell you whether I'm going to be accepting it, but if for some reason I did not accept some part of this agreement or any of the agreement, that would not permit you to withdraw your plea at a later date. Do you understand that, ma'am? |
| Defendant: | Yes, sir. |
| The Court: | Now, Ms. Bradley, the court assumes that you and Mr. Germany have discussed the application of the United States Sentencing Guidelines to your case. Those guidelines have been rendered advisory by recent decisions of the United States Supreme Court, however, this court is still directed to consider those guidelines along with other factors that Congress has |

established in determining what an appropriate sentence might be in any given case here in this court, any criminal case in this court. The court also would - as I mentioned to you something about a presentence report, that document will be presented by the probation office. It will contain information about the charges in this indictment. It will also contain any information about prior criminal records you may have and other personal information such as family history and medical history and employment history, things of that nature. It may also contain some information regarding recommendation s to a sentence in this case, but that information would only be seen by me. Now, a copy of this document will be provided to Mr. Boucek and Mr. Germany, who will have the opportunity to review it with you. Mr. Germany could then file on your behalf a position paper or any objections that you might have to that report. Do you understand that, ma'am?

Defendant:    Yes, sir.

The Court:    Is there any possibility of a 5K1 in this mater?

AUSA Boucek:    No, sir.

The Court:    All right. Ms. Bradley, the court has advised you that you would be giving up your right to appeal your conviction, that is, a finding of guilty if you do plead guilty to this charge. I do want to advise you that you have the right, as does the government, to appeal any dispute about what the sentence might be in this case. So if you, if you disagree with the court's determination about a sentence in this matter, you do have the right to appeal that. Do you understand that, ma'am?

Defendant:    Yes, sir.

The Court:    Now, Ms. Bradley, other than the conversations you may have had with Mr. Germany about how the advisory guidelines, United States Sentencing Guidelines might apply to your case, has anyone made a promise or prediction to you about what your sentence would be if you plead guilty to these charges?

Defendant:    No, sir.

The Court:     I'm sorry?

Defendant:     No, sir.

The Court:     Okay. All right. I'm going to ask Mr. Boucek to
               go over with you on behalf of the government
               what the government's proof would have been had
               this matter proceeded to trial. Please again pay
               attention to what he has to say. I'll be asking
               you questions about that. Mr. Boucek.

AUSA Boucek:   From June 26th, 2002, until September 27, 2002,
               Reginald Lafay Brown deposited four counterfeit
               commercial checks. They were counterfeit in that
               they purported to be drawn on the account and
               businesses which were organizations, and either
               April Bradley or Reginald Brown had authority to
               create, possess or utter the checks. February
               13, 2003, Secret Service agent Jeff Barker
               interviewed Brown regarding the deposits. He
               admitted to knowingly passing the counterfeited
               checks. Reginald Brown said that April Bradley
               gave him the checks and he would deposit them
               and give her half. And Reginald Brown would have
               testified at trial. On August 27, 2002, Sheila
               Cannon deposited check number 45614 in the
               amount of $8,895 into her First South Credit
               Account. The check was counterfeit in that it
               purported to be drawn on the accounts of
               businesses which were organizations and either
               Cannon or Bradley had the authority to create,
               possess or utter the checks. On November 14th,
               2002, Secret Service Agent Barker interviewed
               Cannon regarding the deposit. Cannon made a
               written statement. Cannon admitted to knowingly
               passing a counterfeit check. She said she got it
               from April Bradley who told her to deposit it
               and pay her a portion of the money. Cannon
               admitted to writing April Bradley a personal
               check in the amount of $4,000. Cannon was able
               to produce a copy of the check to Agent Barker.
               Cannon would have testified to all this at
               trial. On August 26, 2002, Conkeesta Johnson
               deposited check number 45618 in the amount of
               $8,800 into her Bank of America account. On
               August 29th, 2002, Johnson deposited check
               number 45616 in the amount of $4,850 into the
               same account. Both checks were counterfeited and
               drawn on a First Tennessee Bank account of Acura
               of Memphis and either Johnson or Bradley had the
               authority to create, possess or utter these

checks. On November 14th, 2002, Secret Service Agent Barker interviewed Johnson. Johnson admitted to knowingly passing counterfeit checks. She said April Bradley approached her with a scheme to make money. She told Bradley – I'm sorry–Bradley told Johnson to open a bank account and deposit counterfeited commercial checks which Bradley would provide her. Johnson admitted to doing so and giving Bradley $4,000 for the first check and $2,000 for the second one. When the checks began bouncing, Johnson approached Bradley who told Johnson to say the checks came in the mail. On December 2nd, 2002, Johnson made a phone call to Bradley -

Counsel:            Judge, if I can interrupt. We are going to admit to the count, the facts with regards to Counts 7 and 41. A lot of this seems to be with the other counts, and that's really a sentencing issue. She doesn't have to admit to any facts with regard to any, I guess, counts that she's not pleading guilty to. And really all I'm going to do is, after Mr. Boucek finishes, say that we plead to the elements of Counts 7 and 41. I just don't – I guess Mr. Boucek can go through it if he wants, but ultimately I'm going to say after what I'm going to advise Ms. Bradley to say because she waived her right to appeal her sentence, and so I'm certainly not going to admit or have her admit to anything with regard to the other counts until I see how the guidelines play out. And I'm just – I guess what I'm doing is trying to save the court some time. So I mean if he wants to go through it -

The Court:          Any reason to go through these other ones?

AUSA Boucek:        Well, Your Honor, I just - the court asked me what the proof would have been if we proceeded to trial.

The Court:          As to these counts.

AUSA Boucek:        That's fine, Your Honor.

The Court:          Let's move on to 41.

AUSA Boucek:        That's fine. There is additional proof relevant to the Count 7, Your Honor, if the Court wants to hear it.

The Court:     All right. Go ahead.

AUSA Boucek:   One of the defendants was arrested on March
               25th, 2003, Catrina Wynn, as she tried to pass
               a counterfeited check. She likewise stated that
               she had received a check from April Bradley and
               provided other agents with sufficient
               information such that they could execute a
               search warrant on the apartment of Latasha
               Wright. That apartment was 2878 Georgetown
               Drive, Apartment 4, in Memphis, Tennessee.
               Latasha Wright is the sister of April Bradley.
               When Agent Barker executed the search warrant he
               found counterfeited checks, false Ids, check
               stock, phony W-2s, envelopes containing
               counterfeited checks. He also found a pawn shop
               receipt for a computer. Latasha Wright gave a
               statement and said that Bradley had been
               printing the checks since she was 17. Wright
               claimed that she had seen Bradley print bogus
               checks and W-2s in the apartment and explained
               that she permitted Bradley to move her printing
               operation to Wright's apartment when Bradley
               expressed concern that the police were watching.
               Wright also stated that when Bradley refused to
               share some of the money with Wright, Wright got
               angry and pawned the computer from the pawn
               store. On April 8, 2003, the Agents mirandized
               Bradley and attempted to question her. Bradley
               stated that she had been expecting them and
               would, quote, see them in court. She had no
               further statement. In September of 2006,
               investigators for the Target Store located at
               7697 Winchester Road became suspicious when the
               checkout employee kept receiving numerous
               counterfeit $100 bills. This person, a minor,
               was the sister of April Bradley. Review of the
               store security camera showed Bradley passing
               counterfeited hundred dollar bills to her
               sister, the cashier, on September 14th,
               September 15th, and September 17th. The store
               camera also showed Bradley passing counterfeited
               checks to the sister in the same Target on
               September 1st. On September 17th, 2006, Bradley
               was arrested as she exited the store after
               passing counterfeit one hundred dollar bills.
               After being mirandized, Bradley denied any
               knowledge of counterfeited money. She later
               revised her statement and admitted to knowingly
               passing counterfeited bills which she claimed
               were given to her by the cashier. Bradley gave

                              26

the agents consent to search her apartment. Inside agents found counterfeited checks and currency. Counterfeited bills found there were the same denomination and matched the serial numbers of counterfeited notes passed at Target. This did occur in the Western District of Tennessee.

The Court:      Would the proof have established that there was approximately $900 worth of counterfeit bills, I suppose, passed on December 17th of '06 by Ms. Bradley?

AUSA Boucek:    Yes, Your Honor, the September 17th transaction would have involved nine $100 bills. Thank you, Your Honor.

The Court:      All right. Ms. Bradley, is the information pertaining to Count 7, the facts pertaining to Counts 7 and 41, is that information basically correct as far as your involvement in these matters are concerned?

Counsel:        Judge, again, I'm just going to advise her to plead to the elements of the offense because there is so many facts in there, and certainly if she makes an admission, that could be used against her at sentencing. And so what I've advised her to do is, in a case like this, I always advise my clients to just plead guilty to the elements of the offense with regard to those factual statements, so that's what I'm going to have her to.

The Court:      Well - Does she admit - I guess since we haven't gone through the specific elements of the offense - does she admit that she aided and abetted Ms. Cannon in either knowingly and intentionally making, uttering, possessing a counterfeit check number 45614 in the amount of $8895 drawn on First Tennessee Bank on the account of Acura, with intent to deceive another person or organization? That's Count 7. Does she admit to those allegations?

Defendant:      Yes.

The Court:      Do you admit, as to Count 41 of the indictment, that you aided and abetted an accomplice known to the grand jury with intent to defraud the unlawful passing, uttering or publishing to

|  | |
|---|---|
| | Target Corporation falsely made forged and counterfeited obligations of the United States, that is, nine $100 bills, federal reserve notes, which you knew to be falsely made, forged or counterfeited? Do you admit to that? That occurred, at least according to that count, on September 17th of 2006. Do you admit to that, ma'am? |
| Defendant: | Yes. |
| The Court: | Okay. All right. Ms. Bradley, the court has advised you of your right to a trial and your other rights in connection with these matters. The court finds that there is an independent basis in fact for your plea. I'm going to ask you if you are in fact pleading guilty to Counts 7 and 41 or the indictment; are you, ma'am? |
| Defendant: | Yes. |
| The Court: | Okay. The court finds that you are freely and voluntarily pleading guilty, Ms. Bradley, you have acknowledged your guilty, and I'm going to accept your plea and enter a judgment of guilty based upon that plea. And when would this matter be set for sentencing, please? |
| The Clerk: | Thursday, February 21st at 1:30. |
| Defendant: | Is there any kind of way you can give me one - that's my son's birthday, February 21st. Could it be the next day? |
| The Clerk: | We can go to the following week on Tuesday the 26th, if that would be acceptable. |
| Counsel: | That's fine. |
| The Court: | That's fine with me. Everybody else all right with that? What was the time? |
| The Clerk: | 1:30. |
| The Court: | 1:30. All right. Ms. Bradley, do you have any questions about what the court has been over with you this afternoon, ma'am? |
| Defendant: | No, sir. |

| | |
|---|---|
| The Court: | Mr. Boucek, anything else we need to take up on this matter this afternoon? |
| AUSA Boucek: | No, sir. |
| The Court: | Mr. Germany? |
| Counsel: | No, Your Honor. Thank you. |
| The Court: | What about her bond situation? |
| AUSA Boucek: | I think we should let it remain the same, Your Honor. |
| The Court: | Ms. Bradley, the court is going to permit you to remain on your present bond status. Of course any obligations that you've been under, you've been reporting, or any other limitations you've been under, you'll need to continue to abide by those. Do you understand that, ma'am? |
| Defendant: | Yes, sir. |
| The Court: | You are excused. Thank you all. |
| AUSA Boucek: | Thank you, Judge. |
| Counsel: | Thank you, Judge. |
| The Court: | All right. Let's adjourn court, please. |

(D.E. 5-1 at 4-32.)

In evaluating the validity of Bradley's collateral challenge to her guilty plea under § 2255, the Court must determine that she knowingly, intelligently, and voluntarily entered her plea of guilty. Based on the plea colloquy and the applicable law, Bradley knowingly, intelligently, and voluntarily entered a plea of guilty. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. at 56, 106 S. Ct. at

369. Defendant acknowledged in open court, under oath, that she understood the consequences of his guilty plea.

Judge Breen described the elements of aiding and abetting in passing a counterfeit check and aiding and abetting in passing counterfeit $100 bills. Defendant responded that she was pleading guilty to those charges. Defendant testified that she had read and understood the plea agreement. Defendant was advised of her right to proceed to trial and assert her alleged innocence. By entering the guilty plea she received the benefit of a three-level reduction for acceptance of responsibility.

The fact that a defendant, at the time she enters her guilty plea, does not know the precise sentence she will receive does not mean that the plea was "unknowing." United States v. Stephens, 906 F.2d 251, 254 (6th Cir. 1990). A defendant's subjective hope of a lesser sentence is unavailing. "Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." United States v. Crusco, 536 F.2d 21, 24 (3rd Cir. 1976). Bradley was specifically advised in open court of the maximum penalties and the applicability of the sentencing guidelines. (D.E. 5-1 at 13, 15.) Bradley indicated that she understood the Court's explanation. (Id. at 13, 14, 20-21.)

Although Defendant claims that her attorney was "ineffective" and that therefore her plea was not "voluntary", the Sixth Circuit Court of Appeals held in Ramos v. Rogers, 170 F.3d 560 (6th Cir. 1999) that "the trial court's proper plea colloquy cured

any misunderstanding he may have had about the consequences of his guilty plea." See also Baker v. United States, 781 F.2d 85, 91 (6th Cir. 1986) (a "defendant's plea agreement consists of the terms revealed in open court"). "Entry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." United States v. Loutos, 383 F.3d 615, 619 (7th Cir. 2004)(citing United States v. Gwiazdzinski, 141 F.3d 784, 788 (7th Cir. 1998)("[t]he purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing."). A defendant's "solemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629.

The United States Supreme Court has held that:

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973).

By voluntarily pleading guilty, Defendant admitted the factual basis for the prosecution's case against her. She cannot now "invalidate" her guilty plea by making a self-serving claim that her counsel was ineffective, particularly when the record shows she was fully and painstakingly informed in open court about the

consequences of her plea and fully admitted that the United States' factual basis was true and correct.

By pleading guilty Defendant received the full three-point reduction for acceptance of responsibility, reducing her total offense level from thirty-three to thirty. Her resulting guideline range for the convictions was 63 to 78 months imprisonment. Had Bradley not pled guilty to two counts, she risked conviction on a forty-four count indictment. Furthermore, her assertion that she had been advised that she would receive a sentence of zero to six months imprisonment for entering a guilty plea is patently false. Defendant testified during the sentencing hearing that she knew "they say I'm supposed to do four or five years for this and, you know, but I honestly know that they don't have to send me to jail" and "everybody say it's going to take nothing short of a miracle for me to walk up out of here without going to jail, but I believe in miracles." (D.E. 51-2 at 50.) Defendant has set forth no facts or allegations which provide a basis for contradicting her own sworn testimony.

Defendant did not attempt to withdraw her guilty plea at any point in the proceedings in the district court, either before or after reviewing the pre-sentence report. Furthermore, Bradley does not allege that she requested counsel to assist her in withdrawing her guilty plea. The evidence of Bradley's guilty was overwhelming. Bradley entered a knowing and voluntary guilty plea. Defendant has failed to establish that she would have not pled guilty in this case

32

had counsel taken any different action.  This issue is without merit and is DENIED.

Bradley also contends that her guidelines range was erroneously computed and violated her right to due process. She did not raise this issue on direct appeal and does not allege that she requested that counsel raise the issue at sentencing or on appeal.

Mistakes in the application of the sentencing guidelines are non-constitutional errors. See Grant, 72 F.3d at 506. Non-constitutional errors ordinarily are not cognizable on collateral review. Id. For Bradley to prevail on this issues, the errors must be "'fundamental defect[s] which inherently result[] in a complete miscarriage of justice,' or, error[s] so egregious that [they] amount[] to a violation of due process." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999)(quoting United States v. Ferguson, 165 F.3d 486, 488 (6th Cir. 1999)(citing Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed.2d 417 (1962)).

The record does not support Bradley's allegations. Defendant voiced no objections to the guideline calculations during the sentencing hearing.  (D.E. 5-2 at 1.)  The range was calculated at sixty-three to seventy-eight months.  Judge Breen recognized that the guidelines were advisory and fashioned a below guidelines sentence pursuant to the factors found in 18 U.S.C. § 3553, sentencing Bradley to forty months imprisonment.  (D.E. 5-2 at 74-81.)  No objections were made after the sentence was imposed.  (Id. at 82.)  Bradley cannot demonstrate a fundamental defect or egregious error.  This issue is noncognizable and is DENIED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Defendant's conviction and sentence are valid and, therefore, her motion to vacate is DENIED. The motion for summary judgment filed by the United States is GRANTED. Judgment shall be entered for the United States.

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484, 120 S. Ct. at 1603-04 (quoting Barefoot, 463 U.S. at 893 & n.4, 103 S. Ct. 3383).

The Supreme Court has cautioned against undue limitations on the issuance of COAs:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA

34

> merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "has already failed in that endeavor."

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893 n.4, 103 S. Ct. 3383). Thus,

> [a] prisoner seeking a COA must prove "something more than the absence of frivolity" or the existence of mere "good faith" on his or her part. We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

<u>Id.</u> at 338, 123 S. Ct. at 1040 (quoting <u>Barefoot</u>, 463 U.S. at 893, 103 S. Ct. 3383); <u>see also</u> <u>id.</u> at 342, 123 S. Ct. at 1042 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[2]

In this case, for the reasons previously stated, the issues raised by Defendant lack substantive merit and are noncognizable. Therefore, she cannot present a question of some substance about

---

[2]     The Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." <u>Miller-El</u>, 537 U.S. at 337, 123 S. Ct. at 1039. Instead, the COA requirement implements a system of "differential treatment for those appeals deserving of attention from those that plainly do not." <u>Id.</u>, 123 S. Ct. at 1040.

which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file her motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is DENIED. If Defendant files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to

proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 6th day of August, 2012.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE